UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:13-CV-01214-JHM

KATHY LITTLE; GREG WALKER and
DEBRA L. WALKER, husband and wife;
RICHARD EVANS; and PHILLIP
WHITAKER and FAYE WHITAKER,
husband and wife; on behalf of themselves and
all others similarly situated                                           PLAINTIFFS

V.

LOUISVILLE GAS AND ELECTRIC
COMPANY and PPL CORPORATION                                  DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss [DN 29] of Louisville Gas and

Electric Company ("LG&E") and PPL Corporation ("PPL"). Fully briefed, this matter is ripe for

decision. For the following reasons, the motion is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

This case involves the operation of the Cane Run power plant in southwestern Louisville.

The Plaintiffs allege that beginning in 2008, they and their neighbors began noticing a persistent

film of dust that coated their homes and properties. (See Compl. [DN 1] ¶¶ 2-6.) They allege that

the Cane Run power plant emits dust and coal ash into the air and onto their homes and

properties several times a month. (Id. ¶¶ 52-57.) The Plaintiffs state that the dust and coal ash

have been emitted from: (1) Cane Run's emission stacks, through which solid particulates are

released during the coal burning process; and (2) Cane Run's sludge plant, where the ash is

mixed with a cementing agent. (Id. ¶¶ 32, 36-39.) Further, the Plaintiffs state that ash, dust, and

other coal combustion byproducts blow onto their properties because they are placed in an

insufficiently-covered landfill. (Id. ¶¶ 42-43.) The Plaintiffs allege that the ash, dust, and coal combustion byproducts are not only annoying, but also, they are composed of dangerous elements, including arsenic, silica, lead, and chromium. (Id. ¶ 1.)

Louisville's Air Pollution Control District ("APCD") is the agency charged with enforcing environmental regulations in Jefferson County. (Id. ¶ 58.) In 2010, the APCD began investigating complaints about Cane Run. As a result of the investigation, the APCD issued several Notices of Violation ("NOVs") to LG&E concerning particulate emissions and the odors produced by Cane Run. Specifically, in July of 2011, the APCD issued an NOV, finding that LG&E allowed fly ash particulate emissions to enter the air and be carried beyond its property line. (See id. ¶ 62.) Four months later, in November of 2011, the APCD issued a second NOV, detailing more violations involving the emission of dust and ash from Cane Run. (Id. ¶ 63.) Subsequently, between July of 2012 and August of 2013, the APCD issued four additional NOVs. (Id. ¶¶ 64-69.) These NOVs were resolved by an administrative proceeding before Louisville's Air Pollution Control Board, which resulted in an Agreed Board Order. (See Ag. Bd. Order No. 13-07 [DN 29-2].)

The Agreed Board Order required LG&E to implement, and comply with, a "Plant-Wide Odor, Fugitive Dust, and Maintenance Emissions Control Plan." (Id. at 4.) In the Agreed Board Order, the Air Pollution Control Board specifically found that: (1) the required measures would "fully address" the alleged violations cited in the NOVs; (2) LG&E "demonstrated compliance at the Cane Run Generating Station" by submitting to the Order's control plan; and (3) the proposed resolution in the Agreed Board Order was "reasonable and adequate under the circumstances." (Id.) After a public hearing on November 20, 2013, the APCD adopted the Agreed Board Order.

On September 6, 2013, the Plaintiffs provided a Notice of Intent to Sue ("NOI") to the Defendants, the APCD's Director, the EPA Administrators, the Director of Kentucky's Division

of Waste Management, the Commissioner of Kentucky's Department of Environmental Protection, and the U.S. Attorney General. The Plaintiffs filed this action more than 90 days from when the notices were delivered. (Notice Letter [DN 1-2].) In the action, the Plaintiffs allege violations of the Clean Air Act ("CAA") and Resource Conservation and Recovery Act ("RCRA"). They also bring state-law claims of nuisance, trespass, negligence, negligence per se, and gross negligence. LG&E and PPL argue that the claims must be dismissed under Fed. R. Civ. P. 12(b)(1) and (b)(6).

## II. STANDARDS OF REVIEW

Fed. R. Civ. P. 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Subject matter jurisdiction is "a threshold determination." Am. Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Ky., 381 F.3d 511, 516 (6th Cir. 2004). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A district court has wide discretion to allow and review affidavits and other documents to resolve disputed jurisdictional facts. Doing so does not convert the motion to dismiss to a Rule 56 summary judgment motion where it does not impact the merits of the plaintiff's claim. See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007).

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting

3

all of the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. The allegations must "'show[] that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

At its core, the Plaintiffs' complaint alleges that LG&E and PPL have excessively emitted dust, ash, and other coal combustion byproducts from the Cane Run plant. Generally, excessive emission claims are covered under the Clean Air Act ("CAA"). Thus, the Court will first analyze the Plaintiffs' CAA claims. Thereafter, the Court will turn its attention to the Plaintiffs' Resource Conservation and Recovery Act ("RCRA") claims and their state-law claims.

### A. COUNT III: CLEAN AIR ACT ("CAA") CLAIMS

In Count III of their complaint, the Plaintiffs allege four types of CAA claims, including claims for: (1) past violations based on the issued NOVs (Compl. [DN 1] ¶ 189); (2) "substantially similar violations" that are "continuing on at least a weekly basis" (id. ¶ 193); (3) a violation of the 20% opacity standard in Cane Run's Title V operating permit (id. ¶ 195); and (4) operating the Cane Run plant after LG&E's Title V operating permit expired. (Id. ¶ 194.) LG&E and PPL argue that these claims must be dismissed. The Court considers each type of CAA claim in turn.

**Past Violations based on Issued NOVs.** In part, the Plaintiffs base their CAA claims on issued NOVs which were addressed by the APCD in its Agreed Board Order. LG&E and PPL argue that the Plaintiffs cannot sue for violations based on these issued and addressed NOVs because: (1) the Agreed Board Order renders the claims non-redressable; (2) the claim preclusion doctrine bars the Plaintiffs from re-litigating the claims; (3) this Court lacks jurisdiction to address the ¶ 189(f) and ¶ 189(r) claims, as they are based on an alleged violation of Reg. 1.13 § 2, which is not federally enforceable; and (4) this Court lacks jurisdiction to address the claims in ¶ 189(b)-(c), ¶ 189(g)-(h), and ¶ 189(m)-(o), as the regulations on which they are based do not constitute "emission standards or limitations" enforceable under the CAA's citizen-suit provision.

LG&E and PPL first argue that the Agreed Board Order renders the Plaintiffs' ¶ 189 claims non-redressable. To establish standing, a plaintiff must show that the injury will be redressed by the relief sought. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). LG&E and PPL argue that the Plaintiffs cannot make this showing, as the alleged CAA violations in ¶ 189 of the complaint have already been resolved. According to them, the Plaintiffs base the ¶ 189 claims solely on NOVs that the APCD resolved via its Agreed Board Order. Further, since the Agreed Board Order addresses the issues raised in ¶ 189 of the complaint, and since the APCD has found LG&E in compliance regarding these issues, the Court can take no other action. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") [DN 29-1] 13-15.) LG&E and PPL argue that "permitting a claim to go forward based upon the same conduct which has already been penalized by an agency in an enforcement action would undermine the goals of ensuring that agencies remain the primary enforcers of [environmental laws]." Benham v. Ozark Materials River Rock, LLC, 2013 WL 5372316, at *7 (N.D. Okla. Sept. 24, 2013).

The Plaintiffs respond by asserting that the Agreed Board Order does not bar their claims. Although the Plaintiffs do not specifically address the ¶ 189 claims in their response, choosing instead to address all their CAA claims generally, they argue that the Agreed Board Order cannot bar their claims because it is an administrative order entered into without a court action. According to the Plaintiffs, citizen-suit jurisdiction under the CAA is limited by 42 U.S.C. § 7604(b)(1)(B), which prohibits the commencement of a citizen suit "if the Administrator or the State has commenced and is diligently prosecuting **a civil action in a court of the United States or a State** to require compliance with the standard, a limitation, or order . . . ." 42 U.S.C. § 7604(b)(1)(B) (emphasis added). The Sixth Circuit has held that an administrative order is not a "civil action in a court of the United States or a State" under the meaning of the statute. Jones v. City of Lakeland, Tenn., 224 F.3d 518, 521 (6th Cir. 2000). Thus, the Plaintiffs argue that the Agreed Board Order cannot bar their CAA claims. The Plaintiffs state that LG&E and PPL have ignored this "civil action" requirement, thus rendering their redressability argument without merit. (Pls.' Mem. in Opp. to Defs.' Mot. ("Pls.' Mem.") [DN 41] 16-19.) The Plaintiffs note that federal courts uniformly hold that a "civil action in court" means what it says—and preemption does not arise when a state agency merely undertakes administrative enforcement efforts. When courts bar environmental citizen suits, the suits involve court actions—not administrative proceedings. See Envtl. Conservation Org. v. City of Dallas, 529 F.3d 519, 525 (5th Cir. 2008).

The Court finds that contrary to the Plaintiffs' argument, LG&E and PPL's position is meritorious. As LG&E and PPL note in their reply, and as they argued during the oral argument on May 5, 2014, the Plaintiffs have essentially confused Article III subject-matter jurisdiction (and the "case or controversy" requirement) with federal question jurisdiction (and the limits of citizen-suit jurisdiction). (Reply in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply") [DN 42] 1-

3.) LG&E and PPL do not argue that the Agreed Board Order constitutes a "civil action" as defined by 42 U.S.C. § 7604(b)(1)(B). Rather, they contend that the Agreed Board Order already provides the only relief available for the Plaintiffs' ¶ 189 claims, thereby making those claims not redressable by an Article III court. (Id.) In essence, by focusing on 42 U.S.C. § 7604(b)(1)(B) instead of LG&E and PPL's redressability argument, the Plaintiffs address an argument that LG&E and PPL did not make. The issue here is not whether the Court has federal question jurisdiction; it is whether the Agreed Board Order bars the Plaintiffs from bringing their ¶ 189 claims due to redressability. For the following reasons, the Court finds that it does.

In Steel Co. v. Citizens for a Better Environment, the Supreme Court held that a plaintiff cannot meet the redressability prong of standing where the alleged violations have been resolved or abated before suit is filed. 523 U.S. 83, 107-09 (1998). In other words, the Court held that private plaintiffs may not sue to assess penalties for wholly past violations. Id. In this case, the Plaintiffs' ¶ 189 claims were addressed and resolved by the Agreed Board Order before the Plaintiffs filed suit. As noted above, the APCD found LG&E's control plan to be "reasonable and adequate." The APCD also found that LG&E "demonstrated compliance" at Cane Run by submitting to the control plan. (Ag. Bd. Order No. 13-07 [DN 29-2].) Therefore, the responsible administrative agency found that LG&E was in compliance as to the violations cited in the issued NOVs. The violations cited in the issued NOVs became wholly past violations.

The Court finds that in light of this fact, it can do nothing to redress the Plaintiffs' ¶ 189 claims. See, e.g., Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC, 637 F. Supp. 2d 983, 988 (N.D. Ala. 2009) (holding that where a regulatory agency grants "meaningful relief of the sort being sought by the citizen," citizen-suit claims are not redressable); see also W. Coast Home Builders, Inc. v. Aventis Cropscience USA Inc., 2009 WL 2612380 (N.D. Cal. Aug. 21,

2009) (holding that no basis for relief exists where the conditions at issue are already being addressed by the administrative agency through a consent order); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987) (noting that citizen suits are proper only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility"). The Plaintiffs' ¶ 189 claims must be **DISMISSED**. LG&E and PPL's motion is **GRANTED** in this respect. In light of this holding, the Court need not address LG&E and PPL's other arguments on the ¶ 189 claims, including their claim preclusion argument, as well as their argument on the Court's jurisdiction over the ¶ 189(f), ¶ 189(r), ¶ 189(b)-(c), ¶ 189(g)-(h), and ¶ 189(m)-(o) claims.

**Substantially Similar Violations Continuing on Weekly Basis.** In addition to their ¶ 189 claims for past violations based on issued NOVs, the Plaintiffs bring CAA claims based on "substantially similar violations" which are "continuing on at least a weekly basis." (Compl. [DN 1] ¶¶ 193, 197.)  LG&E and PPL argue that the Plaintiffs cannot sue for these alleged violations since: (1) the Plaintiffs lack standing; (2) the Plaintiffs failed to provide adequate notice of these claims; and (3) the Plaintiffs' vague allegations do not meet the requirements of notice pleading.

*Standing.* LG&E and PPL first argue that the Plaintiffs lack standing to sue for their "substantially similar" claims, as to both the "injury in fact" prong and the "redressability" prong of the standing inquiry. As for "injury in fact," LG&E and PPL argue that the Plaintiffs have failed to allege facts indicating that the "Plant-Wide Odor, Fugitive Dust, and Maintenance Emissions Control Plan" did not adequately address their "substantially similar" claims. LG&E and PPL argue that the Agreed Board Order specified injunctive relief in the form of the control plan. (Defs.' Mem. [DN 29-1] 21-22.) They cite Ellis v. Gallatin Steel Co., 390 F.3d 461 (6th Cir. 2004), to argue that in light of this control plan, the Plaintiffs have failed to sufficiently plead "injury in fact." In that case, the Sixth Circuit held that the district court committed

reversible error in concluding that the plaintiffs had shown a risk of irreparable harm. The Court reasoned that the plaintiffs had failed to establish how the existing consent decrees would not adequately deal with any post-consent decree violations. Id. at 476. As for "redressability," LG&E and PPL argue that the control plan adopted in the Agreed Board Order addresses compliance with the underlying regulations cited in the NOVs; therefore, there is nothing that the Court can award to redress the "substantially similar" claims.

At the oral argument on May 5, 2014, LG&E and PPL noted that here, the Plaintiffs seek declaratory relief. (Compl. [DN 1] 58, ¶ B.) They also seek "a permanent or final injunction enjoining the Cane Run Defendants from allowing coal dust, fly ash, bottom ash, or other coal combustion byproducts from escaping the Cane Run Site." (Id. at 58, ¶ F.) In addition, the Plaintiffs request "a permanent or final injunction requiring the Cane Run Defendants to take affirmative measures . . . including but not limited to reducing the size of the Coal Ash Landfill to its pre-1999 size." (Id. at 58, ¶ G.) Finally, they request civil penalties and attorneys' fees, as well as compensatory and punitive damages. (Id. at 58-59, ¶¶ H-L.) LG&E and PPL argue that in requesting this relief, the Plaintiffs essentially ask the Court to decide issues which were already decided by the APCD—and reach a different result than it did. LG&E and PPL argue that this is impermissible. See Ellis, 390 F.3d at 477 (noting that the citizen-suit plaintiffs sought to obtain injunctive relief on "more stringent terms than those worked out by the EPA" and holding that such "second-guessing of the EPA's assessment of an appropriate remedy . . . fails to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view").

The Plaintiffs respond that the Agreed Board Order cannot deprive them of standing, as their claims go beyond the specific incidents itemized in the NOVs. The Plaintiffs argue that the complaint is based on LG&E and PPL's repeated and ongoing conduct—and that this conduct is actionable under controlling authority. In support of their position, the Plaintiffs cite Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49 (1987). There, the Supreme Court found that a provision of the Clean Water Act authorizing citizens to commence civil actions for injunctive relief, and/or the imposition of civil penalties, conferred citizen-suit jurisdiction over complaints that make a "good-faith allegation of continuous or intermittent violation." Id. at 64-66. The Court remanded the case for consideration of whether the plaintiff's complaint contained such a "good-faith allegation." However, it noted the plaintiff's allegation that the defendant was "continuing to violate its . . . permit when plaintiffs filed suit . . . ." Id. at 64.

According to the Plaintiffs, this is not simply a case involving wholly past violations, and courts have routinely recognized that the CAA permits recovery for wholly past violations that have been repeated, as well as for ongoing violations. See, e.g., Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc., 61 F.3d 473, 477 (6th Cir. 1995) (noting that "after Gwaltney, Congress amended the Clean Air Act . . . explicitly to allow citizen suits for purely historical violations"); Glazer v. Am. Ecology Envtl. Servs. Corp., 894 F. Supp. 1029, 1037-38 (E.D. Tex. 1995) (finding that plaintiffs may maintain CAA suits based on allegations that past violations were repeated). The Plaintiffs state that to the extent LG&E and PPL argue that their claims have been redressed by the Agreed Board Order, or to the extent LG&E and PPL dispute that violations are continuing, these arguments must be addressed on summary judgment or at trial—not on a motion to dismiss. See Gwaltney, 484 U.S. at 66 (noting that as a general rule, a citizen suit "will not be dismissed for lack of standing if there are sufficient 'allegations of

fact'—not proof—in the complaint" and also noting that such allegations may still be challenged if defendants move for summary judgment on the standing issue, where they may demonstrate to a court "that the allegations were sham and raised no genuine issue of fact").

In addition, the Plaintiffs argue that contrary to LG&E and PPL's position, the terms of the Agreed Board Order do not bar this suit. The Plaintiffs distinguish the Ellis case by showing that the language in the Ellis consent decrees is contrary to the Agreed Board Order's language. Specifically, the Plaintiffs note that the Ellis decrees were explicitly drafted to cover all the claims alleged in the citizen-suit complaint. 390 F.3d at 468. Further, the decrees were forward looking and applied to "continuing [CAA] violations." Id. at 476. Also, in the Ellis decrees, the government covenanted not to sue on the claims addressed therein. Id. at 473. According to the Plaintiffs, these facts are distinct from the present case—and thus, it is not reversible error for the Court to find that the plaintiffs have alleged a risk of irreparable harm. The Plaintiffs note that the Agreed Board Order does not purport to address all the Plaintiffs' claims. Also, it has no reservation of rights, and it does not contain a covenant not to sue. The Plaintiffs argue that it is thus improper for the Court to reach a conclusion similar to the one reached by the Ellis court.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000) (citing Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (notwithstanding the fact that a plaintiff had standing to pursue damages, he lacked standing to sue for injunctive relief)). Here, as to the Plaintiffs' "substantially similar" claims, the Plaintiffs seek declaratory relief, civil penalties, and injunctive relief. (Compl. [DN 1] 58-59, ¶¶ B, F-G, K.) The Court will consider each type of relief in turn.

*a. Declaratory Relief.* The Court may easily dispose of the Plaintiffs' request for declaratory relief on standing grounds, as declaratory relief is not an appropriate basis to support citizen-suit

11

standing, except in special circumstances not present here. Federal courts have explicitly held that declaratory relief does not support a CAA citizen-suit plaintiff's claim of standing. See, e.g., WildEarth Guardians v. Pub. Serv. Co. of Colo., 690 F.3d 1174, 1191 (10th Cir. 2012) (citation omitted). The Plaintiffs do not dispute this authority or respond to this argument. LG&E and PPL's motion to dismiss is thus **GRANTED** to the extent they seek dismissal of the "substantially similar" claims which request declaratory relief. These claims are **DISMISSED**.

b. *Civil Penalties.* The analysis concerning the Plaintiffs' request for civil penalties is not as straight-forward. LG&E and PPL argue, in a footnote, that civil penalties cannot support citizen-suit standing. Their argument seems to be that civil penalties offer no redress to private plaintiffs because such penalties are paid to the Government. In support, LG&E and PPL cite Steel Co., in which the Supreme Court considered the Emergency Planning and Community Right-To-Know Act and held that in requesting civil penalties, "[a citizen-suit plaintiff] seeks not remediation of its own injury . . . but vindication of the rule of law—the 'undifferentiated public interest' in faithful execution of [the law]." 523 U.S. at 106. Again, the Plaintiffs did not dispute the Defendants' cited authority; they also did not specifically respond to this argument.

In Laidlaw, however, the Supreme Court considered such an argument in a Clean Water Act case and held that "it is wrong to maintain that citizen plaintiffs facing ongoing violations never have standing to seek civil penalties." 528 U.S. at 185. The Court noted that "for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description." Id. at 185-86. Thus, the Court finds that in this case, the Plaintiffs have standing to the extent they seek civil penalties; such relief would afford redress to the Plaintiffs for the alleged "substantially similar" violations. As was noted in Laidlaw,

"[t]o the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." Id. at 186.

In a similar vein, the Court also finds that the Plaintiffs have made sufficient factual allegations of injury to confer standing for their "substantially similar" violations. In Laidlaw, the Supreme Court discussed Steel Co. and recognized that it "established that citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." 528 U.S. 167, 188 (2000). The Court went on, however, to note that in Steel Co., "there was no allegation in the complaint of any continuing or imminent violation, and that no basis for such an allegation appeared to exist." Id. Here, there is such an allegation. The Plaintiffs have alleged that despite the Agreed Board Order, "substantially similar violations to those that are the subject of the APCD NOV's are continuing on at least a weekly basis at the Cane Run Site because the Cane Run Defendants have failed to implement measures to control the emission of coal dust, fly ash, bottom ash, and other particulates . . . ." (Compl. [DN 1] ¶ 193.) The Court agrees with the Plaintiffs that this is a sufficient allegation of a redressable "injury in fact" as to their claims for "substantially similar violations" of the CAA.

*c. Injunctive Relief.* The Court's finding that the Plaintiffs have adequately alleged injury in fact as to their "substantially similar" claims, however, does not mandate a finding that this injury is redressable as to the Plaintiffs' request for injunctive relief. The Agreed Board Order states that LG&E has "demonstrated compliance" by submitting to the control plan. Also, it states that the plan provides "reasonable precautions . . . to prevent particulate matter from becoming airborne beyond the worksite in the future" and that "nothing shall prevent the District from initiating enforcement action to remedy any alleged violations of District regulations despite

13

[LG&E's] compliance with the Plan." (Ag. Bd. Order [DN 29-2] 4.) The Court finds that in light of these provisions, it cannot redress the Plaintiffs' claims by entering the requested injunctions.

As LG&E and PPL note, the Plaintiffs ask the Court to impose a zero-tolerance policy on emissions by implementing "a permanent or final injunction enjoining the Cane Run Defendants from allowing coal dust, fly ash, bottom ash, or other coal combustion byproducts from escaping the Cane Run Site." (Compl. [DN 1] 58, ¶ F.) They also seek "a permanent or final injunction requiring the Cane Run Defendants to take affirmative measures . . . including but not limited to reducing the size of the Coal Ash Landfill to its pre-1999 size." (Id. 58, ¶ G.) The Court agrees with LG&E and PPL that in making these requests, the Plaintiffs ask the Court to decide issues which were already decided by the APCD—and reach a different result than it did. This is impermissible. As the Sixth Circuit noted in Ellis, by seeking injunctive relief on "more stringent terms than those worked out by the EPA," the Plaintiffs have improperly asked the Court to second-guess the regulatory agency's assessment of an appropriate remedy. The Court cannot engage in such second-guessing, as doing so would "fail[] to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view." 390 F.3d at 477. LG&E and PPL's motion to dismiss is **GRANTED** to the extent they seek dismissal of the Plaintiffs' "substantially similar" claims which seek injunctions. These claims are **DISMISSED**.

*Adequate Notice.* Because the Court has held that the Plaintiffs have alleged a redressable injury in fact as to their claims for "substantially similar violations" of the CAA and their request for civil penalties, the Court must address LG&E and PPL's argument that the Plaintiffs failed to provide adequate notice of these claims. The CAA requires plaintiffs to give defendants (and

others) a Notice of Intent to Sue ("NOI"). The regulations require the NOI to include "sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the location of the alleged violation, [and] the date or dates of such violation . . . ." 40 C.F.R. § 54.3(b). LG&E and PPL argue that the regulations thus require all NOIs to identify violations with specificity. They also argue that the Plaintiffs' NOI failed to identify their "continuing" violations with such specificity. LG&E and PPL argue that the Plaintiffs' NOI left them guessing as to when, how, and where the alleged "substantially similar" violations occurred. (Defs.' Mem. [DN 29-1] 22-25.)

District courts within the Sixth Circuit have held that notice letters that simply identify a lengthy period rather than stating the dates of alleged violations are insufficient. See, e.g., Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth., 175 F. Supp. 2d 1071, 1077 (E.D. Tenn. 2001) (holding insufficient a notice that a defendant "regularly violated" the opacity limit, where the notice failed to specify the dates of the alleged violations or identify at which sites the violations occurred, but rather only stated that the defendant "regularly violated" the standard "for at least five years"). LG&E and PPL argue that the Plaintiffs' NOI is thus insufficient, as it does not detail with specificity any dates for the "substantially similar" violations. Further, they argue that the Plaintiffs' NOI fails to even identify any emission standard or limitation regarding the alleged "continuing" violations, leaving them to guess as to which violations continued.

The Plaintiffs counter that their NOI was sufficiently specific to satisfy the requirements. They highlight that the NOI incorporated six NOVs, an APCD study regarding Cane Run, and LG&E's Title V permit. The NOVs detail several incidents when LG&E allegedly emitted coal ash beyond their property. The Plaintiffs state this was sufficient to satisfy the requirements. The Plaintiffs also argue that the notice only needed to provide enough information for the **recipients—**

here, LG&E and PPL, the alleged polluters—to identify the standard or limit being violated. See Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc., 50 F.3d 1239 (3d Cir. 1995) (reversing a district court's dismissal based on lack of specificity in a notice under the Clean Water Act and holding that the notice must only contain enough information to let the recipient [i.e. polluter] understand what is being alleged and what it would take to correct the problem).

At the outset of this analysis, the Court notes that the Sixth Circuit has not adopted Hercules. In fact, district courts within the Sixth Circuit have largely rejected Hercules to the extent plaintiffs have argued that they should be permitted to prove related violations after providing a single notice of violation to a defendant. See, e.g., Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n, 2009 WL 8520576, at *12 (E.D. Ky. Feb. 27, 2009) (rejecting Hercules, "which held that once a violation is noticed, any subsequently discovered violations that are directly related to the noticed violation may be included in the citizen suit"); Stephens v. Koch Foods, LLC, 667 F. Supp. 2d 768, 787 (E.D. Tenn. 2009) (rejecting the argument that the plaintiffs were "entitled to prove additional violations of the same type on summary judgment or at trial without having to include them in additional 60-day notice letters as the violations recur or are discovered" and noting that Hercules is "not the law of the Sixth"). This Court likewise rejects the Hercules decision. Instead, the Court will follow the rule in the Sixth Circuit, which requires plaintiffs to strictly comply with all notice requirements. See Sierra Club Ohio Ch. v. City of Columbus, 282 F. Supp. 2d 756, 775-76 (S.D. Ohio 2003) (noting the Sixth Circuit's view); Atl. States Legal Found. v. United Musical Instruments, 61 F.3d 473, 478 (6th Cir. 1995).

In this case, the Plaintiffs correctly note that they incorporated six NOVs into their NOI. These NOVs detailed regulations allegedly violated and the dates on which such violations allegedly occurred. The NOVs also identified the sources on Cane Run that allegedly emitted the

ash, and stated that such emissions were regular and continuing occurrences. However, all of the detailed incidents occurred prior to November 20, 2013, the date of the Agreed Board Order. The Court finds that because of this fact, the Plaintiffs have not strictly complied with the notice requirements as to their "substantially similar" claims. A new notice was required. Due to the Plaintiffs' failure to detail with specificity their "substantially similar" violations, LG&E and PPL have been rendered unable to identify emission standards or limitations that they allegedly violated. Their motion is thus **GRANTED**. The Plaintiffs' "substantially similar" claims seeking civil penalties are **DISMISSED**. In light of this holding, the Court need not address LG&E and PPL's remaining argument that the Plaintiffs failed to satisfy the notice pleading requirements.

**Opacity Claim.** In addition to their claims for "substantially similar" CAA violations, the Plaintiffs allege that LG&E and PPL "regularly exceed the 20% opacity limit" in Cane Run's Title V permit. (Compl. [DN 1] ¶ 195.) "Opacity" is "the degree to which emissions reduce the transmission of light and obscure the view of an object in the background." Reg. 1.02 § 1.49. LG&E and PPL argue that the Plaintiffs cannot sue for an opacity violation because: (1) the NOI does not give adequate notice of an opacity claim; and (2) the Plaintiffs have failed to show that they have standing to sue for any alleged opacity violation. (See Defs.' Mem. [DN 29-1] 26-27.)

*Adequate Notice.* LG&E and PPL argue that the Court lacks jurisdiction over the opacity claims because the Plaintiffs' NOI does not identify a specific emission point at which an opacity violation allegedly occurred on any specific date. LG&E and PPL argue that the NOI thus gave no basis for them to determine whether, where, or when an opacity exceedance occurred. LG&E and PPL argue that when emissions exceed 20% opacity, that does not necessarily mean that a violation has occurred. As a result, notice of the specific emission point, as well as the date, time, and duration of any alleged exceedance, is required. LG&E and PPL state that without such

information, they cannot be expected to determine whether a violation occurred and whether it can be corrected. See Nat'l Parks Conservation Ass'n, 175 F. Supp. 2d at 1077 (holding that where a notice letter "does not specify the dates of the alleged [opacity] violations or identify at which sites the violations occurred" and only states that a defendant has "regularly violated" the opacity standards "for at least the last five years," the opacity claims must be dismissed).

The Plaintiffs argue that their NOI was detailed, timely, and sent to all required parties. However, the Court finds that the NOI was not detailed as to the alleged opacity violations. The NOI states: "[i]n further violation of the CAA, the Cane Run Defendants' activities regularly exceed the 20% opacity limit set by the Cane Run site's Operating Permit, with respect to the Stacks, the SPP, and the Ash Silo." (Notice of Intent Letter [DN 1-2] 16.) This allegation of "regular" opacity violations is not enough. Although the Plaintiffs' NOI indicates their belief that LG&E and PPL have violated the opacity limit, it does not specify the dates of alleged violations or identify any emission point at which an opacity violation allegedly occurred. LG&E and PPL's motion to dismiss is accordingly **GRANTED**, and the Plaintiffs' opacity claims are **DISMISSED**. In light of this holding, the Court need not consider LG&E and PPL's remaining argument that the Plaintiffs have failed to allege "injury in fact" to support their opacity claims.

**Expiration of Permit.** As a final matter, the Plaintiffs allege that the Defendants have violated the CAA by continuing to operate Cane Run even though LG&E's Title V operating permit expired in 2007. (Compl. [DN 1] ¶ 194.) LG&E and PPL argue that this claim fails since LG&E submitted a timely application for renewal, as confirmed by the public record. (Excerpts of Title V Permit Renewal App. [DN 29-4]; Receipt for Title V Renewal App. [DN 29-5].) The CAA states that "if an applicant has submitted a timely and complete application for a permit required by this subchapter (including renewals), but final action has not been taken on such

application, the source's failure to have a permit shall not be a violation of this chapter, unless the delay in final action was due to the failure of the applicant timely to submit information required or requested to process the application." 42 U.S.C. § 7661b(d). LG&E and PPL argue that the Court should thus dismiss the Plaintiffs' claims as deficient. They argue that the Plaintiffs failed to allege that LG&E and PPL filed no renewal application; likewise, they did not allege that LG&E and PPL failed to timely submit the information required to process that application.

The Plaintiffs argue that they have sufficiently alleged that the Defendants have continued to operate Cane Run without a valid Title V permit. (Compl. [DN 1] ¶ 194.) The Plaintiffs state that by only attaching excerpts of LG&E's renewal application and a document purporting to be a receipt, LG&E and PPL have left several questions open, including: (1) whether the renewal application was complete, (2) whether additional information was requested by the permitting authority, and (3) whether LG&E timely submitted the application. (Pls.' Mem. [DN 41] 38.) The Plaintiffs question what has happened over the past six years that has caused the application to not be renewed as of yet. Further, the Plaintiffs state that the Court cannot take judicial notice over the documents proffered by the Defendants, as they are subject to reasonable dispute. See Passa v. City of Columbus, 123 Fed. App'x 694, 697 (6th Cir. 2005) (noting that a court, "on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute"). The Plaintiffs highlight that the submitted documents do not purport to be the complete record regarding the application. (See Pls.' Mem. [DN 41] 38-39.)

The Court finds that the Plaintiffs' argument is more persuasive. The Plaintiffs allege that LG&E's Title V permit expired in 2007 and that the Defendants nonetheless continue to operate Cane Run. (Compl. [DN 1] ¶ 194.) The Court finds that when it accepts this statement as true, and draws all reasonable inferences in favor of the Plaintiffs, the Plaintiffs have sufficiently

alleged a CAA claim based on LG&E's alleged operation of Cane Run without a valid permit. The documents submitted by LG&E and PPL do not purport to be the complete record regarding the application, and on a motion to dismiss, the Court may not take judicial notice of facts which are subject to reasonable dispute. Further, even if the Court could properly take judicial notice of the existence of LG&E's application, that does not automatically compel the conclusion that such application was "timely" or "complete." While LG&E and PPL may properly argue in a summary judgment motion that no genuine issues of fact exist as to whether they have submitted a timely and complete application for a permit—and that any delay in final action was not due to their failure to submit any required or requested information, this issue cannot be properly decided on a motion to dismiss. LG&E and PPL's motion is **DENIED** as to the Plaintiffs' CAA claim involving the alleged operation of Cane Run without a valid permit.

### B. COUNTS I AND II: RCRA CLAIMS

In Counts I and II of the complaint, the Plaintiffs bring RCRA claims against LG&E and PPL. These claims are based on the same activities and events which form the basis for the Plaintiffs' CAA claims. (Compl. [DN 1] ¶¶ 155-83.) In Count I, the Plaintiffs allege that the Defendants' handling of coal combustion residuals at Cane Run violates: (1) Kentucky's special waste landfill requirements at 401 KAR Ch. 45 (and the environmental performance standards incorporated at 401 KAR 30:031); (2) federal municipal solid waste landfill cover and air criteria standards at 40 C.F.R. § 258.21 and 40 C.F.R. § 258.24; and (3) Kentucky's cover standard which is applicable to "contained" landfills at 401 KAR 48:090 § 3. (Id. ¶¶ 163-64.) In Count II, the Plaintiffs allege that the Defendants' handling of coal combustion residuals "may present an imminent and substantial endangerment to health or the environment," in violation of 42 U.S.C. 6972(a)(1)(B). (Id. ¶ 182.) LG&E and PPL argue that these claims must be dismissed.

**Pre-Suit Notice.** LG&E and PPL first argue that the Plaintiffs have not given sufficient notice of the alleged RCRA violations. As with the CAA, RCRA contains notice requirements, which require plaintiffs to include "sufficient information to permit the recipient to identify" the specific standard or regulation allegedly violated, the activity alleged to constitute a violation, and the date or dates of the violation. 40 C.F.R. § 254.3(a). LG&E and PPL argue that "[a]s with their generic CAA claims in ¶¶ 193, 197 and 195, Plaintiffs have failed to provide notice of the specific nature, circumstances, date or duration of the alleged RCRA violations." (Defs.' Mem. [DN 29-1] 30.)

In their NOI, the Plaintiffs state that the "specific dates of violations of RCRA . . . are, on information and belief, daily or near daily since at least 2008 . . . ." (NOI Letter [DN 1-2] 9 n.2.) LG&E and PPL argue that this is insufficient to give them adequate notice of the alleged RCRA violations. LG&E and PPL argue that the Plaintiffs have similarly failed to give adequate notice of their storm water claims, as the NOI fails to provide the date of a violation, the location of an outfall, or a description of the nature of a violation—stating only that "emissions are regularly in the form of dust traveling in the air, as well as in the form of storm water runoff from the Cane Run site," which emissions take place "on at least a weekly basis since at least 2008." (Id. at 9.) In response to this argument, the Plaintiffs again rely on Hercules. They also argue that their NOI contained enough detail, as it incorporated the NOVs, which list examples of dates and times on which LG&E allegedly violated regulations. (Pls.' Mem. [DN 41] 30-31.)

The Court finds that the NOI contained sufficient detail with respect to the RCRA claims which are based on alleged emissions documented, by date and time, in the NOVs. However, as for the RCRA claims involving "ongoing" violations, LG&E and PPL's position is more persuasive. For the reasons outlined above with respect to the Plaintiffs' CAA "substantially

similar" claims, the Court finds that the Plaintiffs have failed to provide sufficient notice of the specific nature, circumstances, date, or duration of any alleged "ongoing" RCRA violations. A broad statement that such violations occur "daily or near daily since at least 2008" is insufficient. The Court also finds that the Plaintiffs' NOI similarly failed to give adequate notice of their storm water claims. Therefore, as to the Plaintiffs' RCRA claims for "ongoing" violations and the Plaintiffs' storm water claims, LG&E and PPL's motion is **GRANTED**. Such claims are **DISMISSED**. The Court notes that as for the Plaintiffs' other RCRA claims, they are nonetheless subject to dismissal, as a matter of law, for the reasons outlined below.

      **Count I Claims under 42 U.S.C. § 6972(a)(1)(A).** LG&E and PPL argue that even if the Plaintiffs have sufficiently provided notice, the Count I claims fail because: (1) the claims alleging violations of 401 KAR Ch. 45 and 401 KAR 30:031 §§ 9 and 11 are not "effective pursuant to" RCRA and are not enforceable in a citizen suit; (2) even if such claims were "effective pursuant to" RCRA, the claims regarding fugitive air emissions are not redressable; and (3) the claims alleging violations of 40 C.F.R. § 258 and 401 KAR Ch. 48 are inapplicable to Cane Run and were not properly noticed. (See Defs.' Mem. [DN 29-1] 31-36.)

      *Claims Alleging Violations of 401 KAR Ch. 45 and 401 KAR 30:031 are Not "Effective Pursuant to" RCRA.* Count I is based on 42 U.S.C. § 6972(a)(1)(A), which provides that "any person may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order **which has become effective pursuant to [RCRA]**." 42 U.S.C. § 6972(a)(1)(A) (emphasis added). The bulk of Count I alleges violations of requirements under Kentucky's special waste program and the environmental performance standards referenced therein. (See Compl. [DN 1] ¶¶ 164(a)-(h) (alleging violations of 401 KAR Ch. 45 and 401 KAR 30:031).) LG&E and PPL

argue that while these standards and requirements are applicable to Cane Run, they are not enforceable in a RCRA citizen suit since they are not "effective pursuant to RCRA." Rather, 401 KAR Ch. 45 and the cited performance standards are a state-law program that is enforceable only under state law. (See Defs.' Mem. [DN 29-1] 31.)

In support of their position, LG&E and PPL cite Ashoff v. City of Ukiah, 130 F.3d 409, 411 (9th Cir. 1997), in which the Ninth Circuit found certain state municipal solid waste program regulations effective pursuant to RCRA after the "EPA approved" them, to the extent that those regulations were not more stringent than the federal criteria. Id. at 412. LG&E and PPL suggest that this case shows that at a minimum, to be effective pursuant to RCRA, a state regulation, program, or other requirement must be approved or authorized by the EPA. They also note that other district court cases have drawn similar conclusions. See, e.g., Frontier Recovery, LLC v. Lane Cnty., 727 F. Supp. 2d 968, 972 (D. Or. 2010) ("a state program must be authorized by the EPA to 'become effective pursuant to' RCRA"); Cameron v. Peach Cnty., Ga., 2004 WL 5520003, at *18-19 (M.D. Ga. June 28, 2004) (noting that citizen suits are not confined to the provisions contained in RCRA if the state standards are approved by the EPA).

Coal combustion residual waste is currently regulated under Subtitle D of RCRA. 75 Fed. Reg. 35,144 (June 21, 2010). Subtitle D establishes a framework for federal, state, and local government cooperation in controlling and managing this non-hazardous solid waste. Id. at 35,136. Under this framework, the "actual planning and direct implementation of solid waste programs under RCRA subtitle D . . . remains a state and local function . . . ." Id. Indeed, the "EPA has no role in the planning and direct implementation of solid waste programs under RCRA subtitle D." Id.; see also id. at 35,159 ("Subtitle D provides no federal oversight of state programs as it relates to coal combustion residuals."). LG&E and PPL argue that because the

EPA has not reviewed or adopted Kentucky's special waste permit program or the environmental performance standards set out under 401 KAR 30:031, it is clear that 401 KAR Ch. 45 and 401 KAR 30:031 are not "effective pursuant to" RCRA and are not federally enforceable through a RCRA citizen suit. The Defendants state that there is simply no special waste permit program currently applicable to coal combustion residual wastes at the federal level.

The Plaintiffs' response is somewhat difficult to discern. First, the Plaintiffs contend that they can sue under RCRA, as well as under any of Kentucky's environmental regulations listed in the complaint. (Pls.' Resp. [DN 41] 32-34.) In support of this position, the Plaintiffs state that the fact that the EPA has not promulgated regulations specifically regulating coal combustion byproducts only means that such wastes are governed by the existing Subtitle D regulations of RCRA. (Id. at 32-33.) Second, the Plaintiffs argue that unlike hazardous waste programs under Subtitle C of RCRA, approved state solid waste programs under Subtitle D do not operate "in lieu of" RCRA. See 61 Fed. Reg. 2,584; 2,587 (Jan. 26, 1996) ("Subtitle D does not provide for State/Tribal requirements to operate 'in lieu of' the Subtitle D Federal revised criteria.") According to the Plaintiffs, LG&E and PPL wrongly contend that Kentucky's municipal solid waste landfill regulatory program must be EPA-approved to operate in lieu of federal regulations.

Third, the Plaintiffs argue that because state solid waste programs do not operate in lieu of RCRA's statutory and regulatory provisions, RCRA citizen suits may be brought to enforce RCRA's provisions in states with approved solid waste management programs. See Ashoff, 130 F.3d at 411-12 ("The Subtitle D Federal revised criteria are applicable to all Subtitle D regulated entities, regardless of whether EPA has approved the State/Tribal permit program. Violation of these criteria may subject the violator to a citizen suit in Federal court."). Thus, the Plaintiffs state that regardless of whether they can sue under Kentucky's regulations, they are permitted to

bring suit under RCRA. Finally, the Plaintiffs note that the Defendants have conceded that Kentucky's solid waste landfill regulatory program was approved by the EPA. (See Defs.' Mem. [DN 29-1] 35 n.23 (citing 58 Fed. Reg. 35,454 (July 1, 1993) and noting that Kentucky's municipal solid waste landfill regulatory program has been EPA-approved).) Thus, the Plaintiffs argue that they can sue under RCRA or any of Kentucky's environmental regulations.

After making these general arguments, the Plaintiffs turn to specific arguments regarding 401 KAR 30:031 and 401 KAR Ch. 45. As for 401 KAR 30:031, the Plaintiffs argue that §§ 9 and 11 are, in fact, "effective pursuant to" RCRA. The Plaintiffs note that 401 KAR 30:005 sets forth definitions for Kentucky's waste management program and lists 401 KAR Ch. 30 as among chapters having a federal RCRA counterpart. See 401 KAR 30:005. The Plaintiffs argue that this listing shows that 401 KAR Ch. 30 was adopted pursuant to RCRA. (See Pls.' Mem. [DN 41] 34-35.) Also, the Plaintiffs note that 401 KAR 30:005 delineates where Kentucky regulations differ from their federal counterparts—and none of Kentucky's revisions to RCRA include changes to 401 KAR 30:031 §§ 9 or 11. Therefore, the Plaintiffs argue that they can bring a RCRA claim for violations of those regulations. (See id.)

As for 401 KAR Ch. 45, the Plaintiffs begin by noting that the chapter addresses "special wastes," which include coal combustion waste. See KRS § 224.50-760. The term "special waste" is drawn from EPA proceedings which led to the exemption of "fly ash waste, bottom ash waste, slag waste, and flue gas emission control waste from regulation under Subtitle C" of RCRA. See Appalachian Voices v. McCarthy, -- F. Supp. 2d --, 2013 WL 5797633, at *3 (D.D.C. Oct. 29, 2013). Thus, the Plaintiffs argue that Kentucky has drawn its designation of fly ash, bottom ash, and other coal combustion byproducts directly from the EPA's interpretation of RCRA. According to the Plaintiffs, because Kentucky's solid waste regulations do not operate in lieu of

RCRA, whether Kentucky calls these wastes "special" or not, they remain "solid wastes" regulated under RCRA Subtitle D. 40 C.F.R. § 261.4(b)(4); 61 Fed. Reg. 2584, 2587 (Jan. 26, 1996). Thus, Kentucky's regulations governing special wastes, codified at 401 KAR Ch. 45, are "solid waste" regulations. The Plaintiffs argue that any doubt that Kentucky's "special waste" regulations are effective pursuant to RCRA is dispelled by KRS § 244.50-760, which provides for the classification of "fly ash, bottom ash, scrubber sludge," and other materials as "special wastes" to be regulated consistent with RCRA. KRS § 224.50-760(1)(b).

The Court agrees with LG&E and PPL that 401 KAR Ch. 45 and 401 KAR 30:031 are not "effective pursuant to" RCRA. As LG&E and PPL point out in their reply, the Plaintiffs incorrectly argue that because coal combustion residuals are "solid wastes" under RCRA Subtitle D, Kentucky's special waste regulations in 401 KAR Ch. 45 and the environmental performance standards in 401 KAR 30:031 §§ 9 and 11 are "effective pursuant to" RCRA and enforceable under that statute. The fact that coal combustion residuals are "solid wastes" under Subtitle D of RCRA does not mean that state standards for coal combustion residual landfills are approved by the EPA. As the Defendants highlight, there is simply no federal counterpart to Kentucky's special waste permit program. See 75 Fed. Reg. 35,159 (June 21, 2010) ("Subtitle D [of RCRA] provides no federal oversight of state programs as it relates to coal combustion residuals."). While the waste permit program's standards are applicable to Cane Run, they simply are not "effective pursuant to" RCRA and cannot form the basis of the Plaintiffs' Count I claims.

Further, the Court finds that the Plaintiffs wrongly rely on Kentucky's EPA-approved Subtitle D program, which relates to municipal solid wastes and not coal combustion residual landfills. Moreover, the Plaintiffs point to no EPA authorization or approval of 401 KAR Ch. 45 or 401 KAR 30:031, the state Subtitle D standard. In fact, as LG&E and PPL note, the Plaintiffs

do not even respond to the cited cases requiring EPA approval of a state program for that program to be deemed "effective pursuant to" RCRA. Merely because a Kentucky regulation refers to RCRA does not make it "effective pursuant to" RCRA. LG&E and PPL's motion is **GRANTED** in this respect. To the extent the Plaintiffs' claims in Count I are based on 401 KAR Ch. 45 and 401 KAR 30:031, they are **DISMISSED**. In light of this holding, the Court need not consider LG&E and PPL's related argument that even if such claims were "effective pursuant to" RCRA, the Count I claims concerning fugitive air emissions are not redressable.

*Applicability of 40 C.F.R. § 258 and 401 KAR Ch. 48.* The only other claims in Count I allege violations of 40 C.F.R. § 258 and 401 KAR Ch. 48. (Compl. [DN 1] ¶¶ 163-64.) LG&E and PPL argue that these claims fail because the cited regulations do not apply to Cane Run. Further, they argue that the claims fail because they have not been properly noticed.

Paragraph 163 of the complaint alleges that the Defendants' activities violate "RCRA's requirement that a solid waste landfill . . . be properly covered in accordance with 40 CFR 258.21 and that a solid waste landfill comply with the air criteria set forth at 40 CFR 258.24." (Compl. [DN 1] ¶ 163.) Importantly, 40 C.F.R. § 258 establishes criteria and standards applicable to "municipal solid waste landfills." A "municipal solid waste landfill" is defined as a landfill "that receives household solid waste," *i.e.* "any solid waste (including garbage, trash, and sanitary waste in septic tanks) derived from households." 40 C.F.R. § 258.2. LG&E and PPL argue that the landfill here does not meet this definition, as it does not receive household waste.

Paragraph 164(i) of the complaint further alleges that the Defendants are in violation of 401 KAR 48:090 § 3 "for failing to properly place covering materials on all solid wastes contained in the Coal Ash Landfill, Ash Treatment Basin and ash ponds." (Compl. [DN ¶ 164.) LG&E and PPL state that 401 KAR 48:090 is inapplicable here because it sets forth requirements applicable

to "contained landfills." A "contained landfill" is defined as a "solid waste site or facility that accepts solid waste for disposal." 401 KAR 48:005. The term "solid waste" expressly excludes "special wastes," as defined in KRS § 224.50-760. KRS § 224.1-010(31)(A). LG&E and PPL argue that here, because only "special wastes" are disposed of in the landfill, the requirements for "contained landfills" do not apply. (Defs.' Mem. [DN 29-1] 34-36.)

Further, LG&E and PPL argue that these claims fail for the independent reason that they have not been adequately noticed. They state that the Plaintiffs' NOI does not mention, discuss, or cite 40 C.F.R. § 258 or 401 KAR 48:090 in support of their claims. See United States v. Louisiana-Pacific Corp., 682 F. Supp. 2d 1141, 1155 (D. Colo. 1988) (noting that a plaintiff cannot "expand [a suit] beyond the specific violations alleged in th[e] letter").

The Plaintiffs respond that the coal ash landfill at Cane Run meets RCRA's definition of a "municipal waste solid landfill" and is thus subject to 40 C.F.R. § 258. The Plaintiffs cite the second sentence in RCRA's definition of "municipal solid waste landfill," which states that such a landfill "also may receive other types of RCRA Subtitle D wastes, such as commercial solid waste, nonhazardous sludge, conditionally exempt small quantity generator waste, and industrial solid waste." 40 C.F.R. § 258.2. "Industrial solid waste" includes coal combustion byproducts. Id. (noting that "industrial solid waste" is "solid waste generated by manufacturing or industrial processes that is not a hazardous waste regulated under subtitle C of RCRA" and noting that such waste may include waste from electric power generation). The Plaintiffs thus argue that the regulation is applicable. The Plaintiffs argue that coal combustion byproducts are "solid wastes" under RCRA and, in this case, were produced by electric power generation. Therefore, Cane Run is properly subject to the RCRA regulations on which the Plaintiffs sue in Count I. (See Pls.' Mem. [DN 41] 36-37.)

The Court disagrees with the Plaintiffs' argument. In their response brief, the Plaintiffs overlook the first sentence of the definition for "municipal solid waste landfill," which states that such a landfill must receive "household waste." 40 C.F.R. § 258.2. The plain language of the "municipal solid waste landfill" definition indicates that if a landfill receives household waste, it is a municipal solid waste landfill—and the fact that it might also receive other types of solid waste is irrelevant. If a landfill does not receive household waste, however, it is not a municipal solid waste landfill. LG&E and PPL's argument is the correct interpretation of the definition. Further, the Court finds that LG&E and PPL's argument is correct to the extent they argue that 401 KAR 48:090 is inapplicable here because it sets forth requirements applicable to "contained landfills." A "contained landfill" is defined as a "solid waste site or facility that accepts solid waste for disposal," 401 KAR 48:005, and the term "solid waste" expressly excludes "special wastes," as defined in KRS § 224.50-760. KRS § 224.1-010(31)(A). LG&E and PPL also correctly note that the Plaintiffs' NOI was insufficient regarding the alleged violations of these standards, as the Plaintiffs did not cite 401 KAR 48:090 or 40 C.F.R. § 258.24 in their NOI. LG&E and PPL's motion to dismiss is accordingly **GRANTED**. The claims are **DISMISSED** to the extent they are based on 40 C.F.R. § 258 and 401 KAR Ch. 48.

**Count II Claims under 42 U.S.C. § 6972(a)(1)(B).** LG&E and PPL next turn their attention to the Plaintiffs' claims in Count II. As noted above, in Count II, the Plaintiffs allege that LG&E and PPL's handling of coal combustion residuals "may present an imminent and substantial endangerment to health or the environment." (Compl. [DN 1] ¶ 182.) LG&E and PPL argue that the Count II claims fail as a matter of law because: (1) the claims reflect an improper collateral attack on the facility's Title V Air Emission Permit, Storm Water Discharge Permit, Special Waste Landfill Permit, and the Agreed Board Order, and are otherwise moot and not

redressable; and (2) the claims cover materials which are more properly regulated under the CAA—not under RCRA, which deals with the handling, storage, treatment, transportation, or disposal of solid or hazardous waste. (See Defs.' Mem. [DN 29-1] 36-40.)

 *Improper Collateral Attack—and Otherwise Moot and Non-redressable.* As noted above, the Plaintiffs' prayer for relief seeks to enjoin the Defendants "from allowing coal dust, fly ash, bottom ash, or other coal combustion by-products from escaping the Cane Run Site." It also seeks to require the Defendants "to take affirmative measures that will ensure that coal dust, fly ash, bottom ash, or other coal combustion by-products will not escape the Cane Run Site . . . ." LG&E and PPL argue that this requested injunctive relief is, in essence, a collateral attack on the Title V Air Emission Permit for Cane Run (which authorizes fly ash and other emissions under the terms and conditions of Cane Run's permit), the Special Waste Landfill Permit, the KPDES Permit (which authorizes suspended solids, including fly ash and storm water discharges), and the control plan implemented pursuant to the Agreed Board Order. They state that an "imminent and substantial endangerment" citizen suit is not available, regardless of context, to enjoin emissions of solid waste that are authorized by a permit for such a facility. (See id. at 36-38.)

 In support of their position, LG&E and PPL cite Greenpeace, Inc. v. Waste Technologies Indus., 9 F.3d 1174 (6th Cir. 1993). In that case, the Sixth Circuit held that a waste operator's compliance with the terms of its RCRA permit precluded a district court's jurisdiction under 42 U.S.C. § 6972(a)(1)(B) to challenge properly permitted activity. The Court reasoned:

> [W]hen Greenpeace alleged in its complaint that the test burn and post-test burn would present an imminent and substantial endangerment, it was asking the district court to review and enjoin the EPA administrator's permit decision . . . . If Greenpeace was prepared to demonstrate that the U.S. EPA disregarded an imminent hazard at the time it issued the permit for the test burn and post-test burn period, 42 U.S.C. § 6976(b) required Greenpeace to bring its appeal directly to this court within ninety days. Because that was not done, Greenpeace forfeited

any opportunity for judicial review of the claims that could have been raised by appealing the RCRA permit amendments in 1992.

Id. at 1182. LG&E and PPL argue that a similar rationale applies here, as the Plaintiffs had an opportunity to challenge the terms and conditions of the Special Waste Landfill Permit, the Title V Air Emission Permit, the KPDES Permit, and most recently, the Agreed Board Order.

Under KRS § 77.310(2), anyone aggrieved by a district's order or permitting decision may challenge the permit or order by "fil[ing] with the district a petition for a hearing." KRS § 77.310(2). LG&E and PPL argue that the Plaintiffs should have gone this route, if they desired to challenge the APCD's decision regarding LG&E's compliance at Cane Run. LG&E and PPL argue that under the Greenpeace decision, RCRA's citizen-suit provisions do not permit a collateral attack on permit requirements or the Agreed Board Order via a demand injunctive relief. See Chemical Weapons Working Grp., Inc. v. U.S. Dep't of the Army, 111 F.3d 1485, 1492 (10th Cir. 1997) ("Because Plaintiffs' imminent hazard claim essentially attacks Utah's decision to issue the Army a [RCRA] permit, we conclude that the district court properly refused to recognize jurisdiction under § 6972(b)."); Palumbo v. Waste Techs. Indus., 989 F.2d 156, 159 (4th Cir. 1993) ("At bottom, plaintiffs' complaint is nothing more than a collateral attack on the prior permitting decisions of [the EPA]. The RCRA judicial review provision plainly forbids such an attack . . .").

The Plaintiffs respond that the facts of Greenpeace are inapposite to the facts of this case. In Greenpeace, after an eighteen-month permitting process, the state regulator issued a permit to a waste treatment facility, allowing the facility to conduct limited burn operations. The plaintiffs brought a court action to enjoin the same operations the regulators permitted. 9 F.3d at 1177. The court found this to be an improper collateral attack on the issued permit. The Plaintiffs state that

this case is different, as the Plaintiffs do not ask the Court to overrule a permit. Instead, they ask the Court to enforce the limits and conditions in LG&E's permits. (Pls.' Mem. [DN 41] 34.)

Even though the Plaintiffs do not ask the Court to overrule an issued permit, as in Greenpeace, the Court agrees with LG&E and PPL that the rationale underlying Greenpeace is applicable to this case and requires this Court to refuse to recognize jurisdiction under 42 U.S.C. § 6972(a)(1)(B). In Greenpeace, the Sixth Circuit recognized that the plaintiff's complaint amounted "to nothing more than an improper collateral attack on the prior permitting decisions of the U.S. EPA . . . ." 9 F.3d at 1178. Here, the Plaintiffs' complaint similarly amounts to nothing more than an improper collateral attack on LG&E's permits, which authorize emissions, and on the APCD's decision concerning the limits and conditions in those permits. KRS § 77.310(2) provides an avenue by which the Plaintiffs could have properly challenged LG&E's permits, or the APCD's order and its determinations. The Court finds that the Plaintiffs should have taken that approach prior to filing a "substantial endangerment" suit under 42 U.S.C. § 6972(a)(1)(B). Further, the Court finds that because the Plaintiffs' claims for injunctive relief under RCRA must be dismissed, their claims for civil penalties must also be dismissed. A citizen suit under RCRA cannot be maintained for civil penalties absent injunctive relief. See Gwaltney, 484 U.S. at 58 (noting that under the Clean Water Act's citizen-suit provision, which is substantively similar to 42 U.S.C. § 6972, civil penalties may not be awarded separately from injunctive relief); Sánchez v. Esso Std. Oil de Puerto Rico, Inc., 2010 WL 3087485, at *2 (D.P.R. Aug. 5, 2010) (applying Gwaltney to a RCRA citizen suit). LG&E and PPL's motion to dismiss is **GRANTED** in this respect; the Plaintiffs' claims in Count II must be **DISMISSED**. In light of this holding, the Court need not address LG&E and PPL's remaining argument, which is whether the Plaintiffs' claims in Count II improperly cover materials regulated under the CAA.

### C. COUNT IV-IX: STATE-LAW CLAIMS

LG&E and PPL next argue that the Plaintiffs' state-law claims must be dismissed because through the guise of these claims, the Plaintiffs ask the Court to regulate Cane Run's emissions. According to LG&E and PPL, all of the Plaintiffs' state-law claims are preempted by the CAA. (See Defs.' Mem. [DN 29-1] 40.) "Field preemption" occurs where the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." N.C., ex rel. Cooper v. Tenn. Valley Auth., 615 F.3d 291, 303 (4th Cir. 2010) (quoting Pac. Gas & Elec. Co. v. St. Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 204 (1983)). "Conflict preemption" includes claims where state law "interferes with the methods by which the federal statute was designed to reach [its] goal." Id. (quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987)). LG&E and PPL argue that both of these doctrines apply to bar the Plaintiffs' claims. In Am. Electric Power Co. v. Connecticut, the Supreme Court held that federal common-law claims are displaced by the CAA. 131 S. Ct. 2527, 2540 (2011) ("AEP"). However, neither the Supreme Court nor the Sixth Circuit have specifically addressed whether the CAA preempts a plaintiff's state common-law tort claims.

LG&E and PPL argue that with the CAA, Congress enacted a comprehensive, pervasive regime for joint federal and state regulation of air emissions. United States v. DTE Energy Corp., 711 F.3d 643, 649 (6th Cir. 2013) ("Over several decades of regulation and litigation, EPA has created a system intended to protect air quality, conserve environmental agencies' scarce resources, and minimize costs for regulated industries."); N.C., ex rel. Cooper, 615 F.3d at 298 ("To say this regulatory and permitting regime is comprehensive would be an understatement."). They argue that this framework leaves "no room for a parallel track" where private plaintiffs can side-step the expert federal and state agencies through lawsuits seeking to establish common-law

restrictions on emissions inconsistent with those established under the CAA. (Defs.' Mem. [DN 29-1] 40-47.) In this respect, LG&E and PPL begin by addressing Ouellette and AEP.

In Ouellette, Vermont landowners sued a New York paper mill for common-law nuisance under Vermont law. The parties disputed whether the Vermont landowners' state common-law claims against the New York paper mill were preempted under provisions of the Clean Water Act. The Supreme Court held that the Clean Water Act preempted suits arising under the law of Vermont (the affected state), as the "inevitable result" of allowing such suits "would be a serious interference with the achievement of the 'full purposes and objectives of Congress.'" 479 U.S. at 493. The Court noted, however, that the plaintiffs could proceed under the law of New York (the source state). Id. at 494-98. In this respect, the Court reasoned:

> [t]he CWA precludes only those suits that may require standards of effluent control that are incompatible with those established by the procedures set forth in the Act. The saving clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State.

Id. at 497. While the Court recognized that a source state's "nuisance law may impose separate standards and thus create some tension with the permit system," it ultimately determined that the application of that law would "not disturb the balance among federal, source-state, and affected-state interests." Id. at 499.

In AEP, the Supreme Court analyzed the CAA's preemptive scope with regard to federal common-law claims, holding that nuisance claims under federal law "cannot be reconciled with the decision-making scheme Congress enacted" in the CAA. 131 S. Ct. at 2540. In so holding, the Court reasoned that Congress' "prescribed order of decision-making"—in which "the first decider under the Act is the expert administrative agency" and courts participate through "review [of] agency action"—provides a compelling reason to "resist setting emissions standards by

judicial decree" via federal common-law. Id. at 2539. The Court intentionally refrained, however, from deciding whether state-law nuisance claims were preempted, as the parties had not briefed the issue. Id. at 2540. The Court only stated that "the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act," and that "[l]egislative displacement of federal common law does not require the same sort of evidence of a clear and manifest congressional purpose demanded for preemption of state law." Id.

LG&E and PPL argue that these cases compel the conclusion that the Plaintiffs' state-law claims are preempted. They argue that the functional concerns that led the Supreme Court in both Ouellette and AEP to find that the applicable statute preempted the asserted common-law claims apply with full force here. (See Defs.' Mem. [DN 29-1] 46.) LG&E and PPL highlight that other courts have relied on these cases to hold that the CAA preempts state common-law claims. In specific, they cite the Fourth Circuit's decision in N.C., *ex rel.* Cooper v. Tenn. Valley Authority. There, the Court found state common-law claims to be preempted by the CAA, 615 F.3d at 298, reasoning that Ouellette was "emphatic that a state law is preempted if it interferes with the methods by which the federal statute was designed to reach its goal, admonished against the toleration of common-law suits that have the potential to undermine the regulatory structure, and singled out nuisance standards in particular as vague and indeterminate." Id. at 303 (internal alterations and quotations omitted). LG&E and PPL urge this Court to follow the Fourth Circuit and recognize the "considerable potential mischief" in permitting state common-law actions. Id.; see Nature Village of Kivalina v. ExxonMobil Corp., 696 F.3d 849 (9th Cir. 2012) (CAA displaced a federal common-law claim for public nuisance); Comer v. Murphy Oil USA, Inc., 839 F. Supp. 2d 849, 865 (S.D. Miss. 2012) (CAA preempted state-law nuisance, trespass, and negligence claims);

United States v. EME Homer City Generation L.P., 823 F. Supp. 2d 274, 296-97 (W.D. Penn. Oct. 12, 2011) (CAA preempted state common-law public nuisance claims).[1]

The Plaintiffs argue that the CAA does not preempt their state-law claims. They begin by citing Her Majesty the Queen in Rte. of Prov. of Ontario v. City of Detroit, 874 F.2d 332, 343 (6th Cir. 1989) ("Her Majesty"). In that case, several environmental groups brought claims against the City of Detroit related to the proposed construction of a municipal trash incinerator. The case was removed from a Michigan state court, and the district court denied the plaintiffs' motion to remand on the basis that their state-law statutory claims were preempted by the CAA. Id. at 333-34. On appeal, the Sixth Circuit addressed the issue of preemption with regard to the state-law claims. It held that the "plain language of the CAA's savings clause compels the conclusion" that the CAA did not preclude the plaintiffs' statutory claims. Id. at 343. The Sixth Circuit found that language from the CAA "clearly indicates that Congress did not wish to abolish state control." Id. The Court also considered the Ouellette case, stating: "[T]hat Congress did not seek to preempt actions such as involved in this appeal is clearly indicated by the Court's holding in [Ouellette]." Id. at 344. However, this decision only goes so far with regard to the facts of this case; the Sixth Circuit has not considered state common-law claims. The Plaintiffs argue that the decision is still important because it foreshadows how the Sixth Circuit will approach the issue. (See Pls.' Mem. [DN 41] 8-11, 14-16.)

---

[1] LG&E and PPL also argue that contrary to the CWA's saving clause, which the Supreme Court found to preserve other state actions, Ouellette, 479 U.S. at 497, the CAA's saving clauses do not have that effect.

42 U.S.C. § 7604(e) states: "Nothing in this section shall restrict any right which any person . . . may have . . . to seek enforcement of any emission standard or limitation or to seek any other relief . . . ." 42 U.S.C. § 7604(e). LG&E and PPL argue that this clause only provides that the creation of a citizen-suit cause of action does not **itself** preempt other causes of action that might exist; it says nothing about the preemptive effect of other sections of the CAA. (Defs.' Reply [DN 42] 11.)

42 U.S.C. § 7416 states: "nothing in this [Act] shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation . . . or (2) any requirement respecting control or abatement of air pollution." 42 U.S.C. § 7416. LG&E and PPL argue that this clause only allows states and political subdivisions to establish affirmative standards; it does not authorize judges or juries to use common law to impose retroactively their own, different emission limits. (Defs.' Reply [DN 42] 11.)

The Plaintiffs urge the Court to accept the Third Circuit's position on the issue. In Bell v. Cheswick, the defendant moved to dismiss the plaintiff's state-law tort claims on the grounds of preemption, arguing that allowing such claims would "undermine the [CAA]'s comprehensive scheme, and make it impossible for regulators to strike their desired balance in implementing emissions standards." 734 F.3d 188, 193 (3d Cir. 2013). Based on Ouellette and Her Majesty, the Third Circuit held that the CAA "does not preempt state common law claims based on the law of the state where the source of the pollution is located." Id. at 197. The Plaintiffs note that other courts, including the Western District of Kentucky, have similarly held that the CAA does not preempt state common-law claims. See, e.g., Tech. Rubber Co. v. Buckeye Egg Farm, L.P., 2000 WL 782131 (S.D. Ohio June 16, 2000); Gutierrez v. Mobil Oil Corp., 798 F. Supp. 1280, 1285 (W.D. Tex. 1992); Merrick v. Diageo Americas Supply, Inc., No. 3:12-CV-334-CRS, -- F. Supp. 2d --, 2014 WL 1056568 (W.D. Ky. Mar. 18, 2014).[2]

The Court agrees with Judge Simpson's recent decision in Merrick that "the analysis as set forth by the Third Circuit, coupled with the Sixth Circuit's analysis in *Her Majesty*, captures the prevailing law for CAA preemption. In the years since the Supreme Court's ruling in [*AEP*] that the CAA displaces federal common-law claims, courts have increasingly interpreted the CAA's savings clause to permit individuals to bring state common-law tort claims against polluting entities. This interpretation has been cited with approval by a Kentucky trial court, and it corresponds with longstanding Sixth Circuit precedent." 2014 WL 1056568, at *9. Therefore, the Court finds that the Plaintiffs' state common-law tort claims are not preempted by the CAA. LG&E and PPL's motion to dismiss is **DENIED** in this respect.

---

[2] The Court recognizes that LG&E and PPL have filed a Notice of Supplemental Authority [DN 47] concerning the Merrick decision. In it, they note that Judge Simpson has granted the defendant's motion to certify for appeal the portion of its ruling holding that the plaintiffs' state common-law claims were not preempted by the Clean Air Act. The Court also recognizes that the Plaintiffs have filed a response to this notice [DN 48].

### D. PLAINTIFFS' CLAIMS AGAINST PPL

As a final matter, the Defendants urge the Court to dismiss the Plaintiffs' CAA and RCRA claims against PPL. They argue that the Plaintiffs' CAA claims must be dismissed since the complaint contains no allegation that PPL itself violated any emission standard or limitation. They argue that the Plaintiffs' RCRA claims must be dismissed since the complaint contains no allegations that could support the conclusion that PPL itself violated any permit or regulation at Cane Run—or otherwise was involved in the management or disposal of wastes at the facility. The Defendants state that the complaint's allegations make clear that LG&E—not PPL—owns and operates Cane Run. (Compl. [DN 1] ¶¶ 25-27.) Further, the APCD issued Cane Run's Title V operating permit to LG&E—not PPL. (Id.) The NOVs relied on by the Plaintiffs to support their claims also name only LG&E. The Defendants argue that in light of these facts, the Plaintiffs have failed to state a claim against PPL. (See Defs.' Mem. [DN 29-1] 48-49.)

Also, the Defendants argue that the Plaintiffs' NOI allegations are insufficient under the CAA and RCRA notice provisions as to PPL, as the NOI fails to provide information as to any conduct by PPL that caused or contributed to the alleged violations. The NOI only states that PPL "acquired, and is therefore the successor-in-interest to, E.On U.S. LLC, and E.On U.S. Services Inc." The Defendants argue that this is not enough. See Stark-Tusc-Wayne Joint Solid Waste Mgmt. Dist. v. Am. Landfill, Inc., 2012 WL 4475444, at *5 (N.D. Ohio Sept. 26, 2012) (holding that "claiming that 'other WMI subsidiaries' are also responsible for alleged violations without providing any description of unlawful conduct attributable to that entity is insufficient").

The Plaintiffs respond that corporate parents have been held liable under CAA or RCRA where they were "decision-makers" or "directly responsible" for the activities at issue. See, e.g., Duquesne Light Co. v. E.P.A., 698 F.2d 456, 472-73 (D.C. Cir. 1983) (finding that the CAA

allows suits against "one who runs a facility as a lessee and one who supervises its operation"); United States v. Ne. Pharm. & Chem. Co., Inc., 810 F.2d 726, 744-45 (8th Cir. 1986) (finding that a plant supervisor could be liable under RCRA, as he was "directly responsible" for arranging for the transportation and disposal of hazardous substances—and further finding that RCRA may impose liability upon non-negligent off-site generators). The Plaintiffs state that their allegations are sufficient at this stage in the litigation because the complaint alleges that: (1) PPL is LG&E's corporate parent; (2) PPL holds out LG&E as part of the "PPL family of companies"; and (3) together, LG&E and PPL "operate" Cane Run. (Compl. [DN 1] ¶¶ 2, 25-26.) The Plaintiffs argue that "[s]ubsumed in the allegation that PPL 'operates' Cane Run is the allegation that PPL 'controls or supervises' operation of the plant. No more is required." (Pls.' Mem. [DN 41] 40.)

The Court agrees with the Plaintiffs. When the Court views the complaint's allegations in the light most favorable to the Plaintiffs and construes all reasonable inferences in their favor, it finds that the Plaintiffs have implicitly alleged that PPL controlled and/or supervised the plant— and thus, that PPL was involved in the alleged wrongful conduct. At this stage of the litigation, this is sufficient. LG&E and PPL's motion is **DENIED**. PPL remains a defendant in this action.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss [DN 29] is **GRANTED** in part and **DENIED** in part, consistent with this Memorandum Opinion and Order. Remaining in this action are the Plaintiffs' state-law claims, as well as their CAA claims related to the alleged operation of Cane Run without a valid permit.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 16, 2014

cc:     counsel of record

39