UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:13-CV-01214-JHM

KATHY LITTLE; GREG WALKER and
DEBRA L. WALKER, husband and wife;
RICHARD EVANS; and PHILLIP
WHITAKER and FAYE WHITAKER,
husband and wife; on behalf of themselves and
all others similarly situated                                                                                    PLAINTIFFS

V.

LOUISVILLE GAS AND ELECTRIC
COMPANY and PPL CORPORATION                                                                       DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for partial summary judgment by Defendants Louisville Gas and Electric Company ("LG&E") and PPL Corporation ("PPL"). [DN 93]. Fully briefed, this matter is ripe for decision. For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND

This case involves the operation of the Cane Run Generating Station in southwestern Louisville by LG&E. The Plaintiffs allege that beginning in 2008, they and their neighbors began noticing a persistent film of dust that coated their homes and properties. (*See* Compl. [DN 1] ¶¶ 2-6.) They allege that the Cane Run power plant emits dust and coal ash into the air and onto their homes and properties several times a month. (*Id.* ¶¶ 52-57.) The Plaintiffs state that the dust and coal ash have been emitted from: (1) Cane Run's emission stacks, through which solid particulates are released during the coal burning process; and (2) Cane Run's sludge plant, where the ash is mixed with a cementing agent. (*Id.* ¶¶ 32, 36-39.) Further, the Plaintiffs state that ash,

dust, and other coal combustion byproducts blow onto their properties because they are placed in an insufficiently-covered landfill. (*Id.* ¶¶ 42-43.) The Plaintiffs allege that the ash, dust, and coal combustion byproducts are not only annoying, but they are also composed of dangerous elements, including arsenic, silica, lead, and chromium. (*Id.* ¶ 1.)

Louisville's Air Pollution Control District ("APCD") is the agency charged with enforcing environmental regulations in Jefferson County. (*Id.* ¶ 58.) Pursuant to this authority, the APCD issued LG&E an operating permit for the Cane Run Generating Station, as is required under Title V of the federal Clean Air Act ("CAA") Amendments of 1990. (*See* 2002 Permit [DN 1-4] at 21–93.) This permit became effective on October 30, 2002, and was set to expire on October 30, 2007. (*Id.* at 21.) On April 30, 2007, LG&E submitted an application for renewal of that permit, and the renewed permit was issued on November 18, 2014. (*See* 2014 Permit [DN 94-1] at 5.) The Cane Run Generating Station was operational throughout this time period.

On September 6, 2013, the Plaintiffs provided a Notice of Intent to Sue to the Defendants and the appropriate government agencies. The Plaintiffs filed this action more than 90 days from when the notices were delivered. (Notice Letter [DN 1-2].) In the action, the Plaintiffs alleged violations of the CAA and Resource Conservation and Recovery Act ("RCRA"). They also brought state-law claims of nuisance, trespass, negligence, negligence per se, and gross negligence. In a previous order, this Court dismissed all claims under the RCRA and all claims under the CAA except one: a claim for violating the CAA by operating the Cane Run Generating Station without a Title V operating permit. [DN 49]. The Defendants now move for summary judgment only as to the CAA Title V permit claim.

## II. STANDARDS OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. CONTROLLING LAW

Title V of the CAA Amendments of 1990 "requires those who operate major stationary sources of air pollution to obtain operating permits . . ." *Ohio Pub. Interest Research Grp., Inc.*

*v. Whitman*, 386 F.3d 792, 794 (6th Cir. 2004) (citations omitted). Under Title V and the federal regulations promulgated under it, *see* 40 C.F.R. §§ 70.1 *et seq.*, "[e]ach state is required to develop, and submit for EPA approval, an operating permit program that meets the requirements of Title V . . ." *Whitman*, 386 F.3d at 794 (citing 42 U.S.C. § 7661a(d)(1)). To meet this requirement, Kentucky has created an air pollution control district in every county, with each district responsible for issuing all permits required under Title V. KRS §§ 77.010, 77.195. The Louisville Metro/Jefferson County APCD, which is governed by its Air Pollution Control Board, has enacted Regulation 2.16, "Title V Operating Permits," which establishes the procedures for obtaining or renewing a Title V permit. (*See* Regulation 2.16 [DN 94-1] at 255–82.) While there are federal statutes and regulations that also govern the issuance or renewal of Title V permits, these statues and regulations are largely identical in content to the requirements of Regulation 2.16 as it pertains to the issues in this case. *Compare* 42 U.S.C. § 7661b(d) *with* Regulation 2.16 § 5.2.1.1 (failure to have permit is no violation if source has submitted a timely application for renewal that has yet to receive action by the entity entrusted with issuing permits). Any substantive distinctions between the federal and local laws and regulations that affect the Court's decision will be noted.

### B. ANALYSIS

There is very little factual dispute as to the permitting process for the Cane Run Generating Station: the parties agree on when LG&E's 2002 permit expired, when the application for renewal was submitted, and when the new permit was issued. However, the legal significance of those facts and certain intervening events are contested, meaning that the Court must look to Regulation 2.16 and determine whether LG&E ever operated without a proper Title V permit.

4

Section 3.1.1.6 of Regulation 2.16 states, "A complete permit application must be submitted to the District at least six months prior to the date of permit expiration . . ." (Regulation 2.16 [DN 94-1] at 263.) LG&E submitted its application on April 30, 2007, exactly six months before the expiration of its 2002 permit on October 30, 2007. (2014 Permit [DN 94-1] at 5.) Further, Section 3.2.3 states, in pertinent part, "Unless the District determines that an application is not complete within 60 days of receipt of the application as shown on the District tracking log, the application shall be deemed to be complete . . ." (Regulation 2.16 [DN 94-1] at 264.) The evidence in the record indicates that the APCD never determined that the application was incomplete within 60 days of receipt. First, the affidavit of Paul Aud [DN 94-2], the industrial permitting manager at the APCD, states that based upon a review of the application file, the APCD made no further requests for information in the 60 days immediately following receipt of the application.[1] And second, the 2014 Title V Operating Permit states that the application was "Administratively Complete" on June 30, 2007, 60 days after the application was filed. [DN 94-1, at 5]. The application would have only been administratively complete on June 30, 2007, if the APCD had made no request for further information in those 60 days, as Regulation 2.16 § 3.2.3 deems an application complete as a matter of law after 60 days unless the District makes a request for information in that time period. [DN 94-1, at 264]. Aud's review of the application file and the 2014 Title V Operating Permit both indicate that no further requests

---

[1] The Plaintiffs argue that Aud's factual assertions are not based on personal knowledge and should be disregarded. Aud was not an employee of the APCD at the time the application was received or the 60 days that followed; instead, his knowledge is based upon his review of the application file (Dep. Paul Aud [DN 105-15] at 11), as well as a review of email correspondence between the relevant parties that was performed by others who reported their findings to him. (*Id.* at 12.) The Court agrees that Aud does not have personal knowledge of the review of the email accounts, as Aud's knowledge of this review is based on hearsay. But Aud has personal knowledge of the review of the application file, as he personally conducted that search. The personal knowledge requirement is met when such knowledge is "acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience . . ." *United States v. Kerley*, 784 F.3d 327, 338 (6th Cir. 2015) (quoting *Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004–05 (8th Cir. 1986)). Because Aud's statement that no further requests for information were made in the 60 days following receipt of the application is limited to those searches that he actually conducted, the Court will weigh this evidence accordingly.

for information were made, and the Plaintiffs have not introduced any evidence that suggests any requests for information were made in that time period. Therefore, the Court concludes that LG&E's application was complete on June 30, 2007.

This is significant, as Regulation 2.16 § 5.3.3 states,

> If a timely and complete application for permit renewal is submitted to the District and the District fails to take final action on issuing or denying the renewal permit on or before the end of the previous permit's date of expiration, the source shall continue to operate under the previous permit. The shield shall be in effect until the renewal permit is issued or denied.

Because LG&E submitted both a timely (§ 3.1.1.6) and complete (§ 3.2.3) application for renewal, and final action was not taken until November 18, 2014, well after the expiration of the previous permit on October 30, 2007, LG&E could continue to operate under the 2002 Title V Operating Permit between October 30, 2007, and November 18, 2014.

However, the Plaintiffs argue that even if LG&E was initially permitted to operate under the 2002 permit beyond its expiration in 2007, it lost that protection when it failed to comply with further requests for information from the APCD. Regulation 2.16 § 3.2.3 additionally states the following:

> If, while processing an application determined to be complete, the District determined that additional information is necessary, it may request the information in writing and set a reasonable deadline for response. If the source fails to respond to the request for additional information within a reasonable time frame, the source loses the permit shield, if applicable[.]

The plaintiffs argue that LG&E failed to timely respond to three additional requests for information made by the APCD: a 2011 request for an environmental acceptability demonstration for the Cane Run landfill under the Strategic Toxic Air Reduction, or STAR, Program; a 2012 request for emissions information for a permit to construct a natural gas

combined-cycle ("NGCC") generating unit; and multiple failures by LG&E to submit its annual emissions inventory report. They further argue that each of these failures to submit required information caused LG&E to lose the protection of the 2002 permit.

The Court begins its analysis by looking to the APCD's own interpretation and application of its regulations. *See Navistar Int'l Transp. Corp. v. U.S. E.P.A.*, 858 F.2d 282, 286 (6th Cir. 1988) ("[A]n administrative agency's interpretation of its own regulation is accorded considerable deference on judicial review unless it is inconsistent with the terms of the regulation") (citations omitted). Here, the APCD concluded that LG&E never lost the protection of the 2002 permit. The APCD had the authority to withdraw that protection under Regulation 2.16 § 3.4.1 for failing to supplement its renewal application but never took such action. [DN 94-1, at 264]. Further, Paul Aud stated in his affidavit that "[n]othing in the District's file indicates any basis for loss of the completeness status of the permit application during the review process," and that "LG&E was fully authorized to continue to operate under the Cane Run Generating Station" under the 2002 permit until a renewal permit was issued. (Aff. Paul Aud [DN 94-2] ¶¶ 6–7.) The Plaintiffs argue that these statements should be disregarded as legal conclusions, but the Court gives deference to the conclusion of the administrative agency which has promulgated these regulations and is responsible for their interpretation, as "the agency has expertise that the court does not." *Shweika v. Dept. of Homeland Security*, 723 F.3d 710, 718 (6th Cir. 2013). The Court should only reject the APCD's conclusion that LG&E complied with its regulations "if the agency's interpretation [of its own regulations] is plainly erroneous or inconsistent," and the Plaintiffs have not presented any evidence demonstrating that the APCD's interpretation, or its conclusion based on that interpretation, meets that standard. *Summit Petroleum Corp. v. U.S. E.P.A.,* 690 F.3d 733, 746 (6th Cir. 2012) (citations omitted).

7

The Plaintiffs argue that additional information was requested and not given in a timely manner on three different instances, but each instance is only tangentially related to the Title V permitting process.  It is true that some of the information requested was later incorporated into the 2014 Title V Operating Permit, but it was reasonable for the APCD to conclude that the requests for information were not made in relation to the Title V permit application, as the APCD did not even begin evaluating the Title V permit application until 2013, after those requests were made.  (Dep. Yiquin Lin [DN 105-1] at 3.)  Further, the requests for information were made with specific reference to either the STAR Program [DN 105-4, at 3] or the NGCC construction permit [DN 105-8, at 3], not the Title V permit application, and the APCD required all polluting sources to submit an annual emission inventory report regardless of whether the source operated under a Title V permit.  (Dep. Paul Aud [DN 114-1] at 37.)  Thus, it was not plainly erroneous for the APCD to conclude that these requests for information were not in regards to the Title V permit renewal application, and the Court rejects the Plaintiffs' argument that LG&E lost the protection of the 2002 permit because of any failure to submit additional requested information.

LG&E has demonstrated that it timely submitted an application that, by operation of law, was deemed complete.  And the Plaintiffs have put forth no evidence that demonstrates that LG&E's application would have lost its status as complete at any time between 60 days after its submission and the issuance of the 2014 permit.  Thus, under Regulation 2.16 § 5.3.3, LG&E was permitted to operate the Cane Run Generation Station under the 2002 permit until the 2014 permit was issued.  Because Cane Run had a valid Title V Operating Permit at all times relevant to the claims asserted in this case, the Plaintiffs' claim that LG&E operated Cane Run without a valid permit must fail.  Therefore, the Defendants are entitled to summary judgment on the

Plaintiffs' Title V permit claim. Further, because the Title V permit claims was the only remaining claim against Defendant PPL, it shall be dismissed as a party to this case.

### IV. SUBJECT MATTER JURISDICTION

The Plaintiffs' complaint asserts that the Court has jurisdiction pursuant to 42 U.S.C. § 6972 (the RCRA claims previously dismissed) and 42 U.S.C. § 7604 (the CAA claims), with the Court having supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. [DN 1, ¶ 17]. However, with dismissal of the Title V permit claim, all of the Plaintiffs' federal claims have been dismissed, leaving only the state law claims. "As a rule of thumb . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims," under 28 U.S.C. § 1367(c)(3). *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). However, the Court must consider factors such as "judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction . . ." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The parties did not address these issues in their briefs. Therefore, the Court will order briefing on the issue before deciding whether to exercise supplemental jurisdiction over the state law claims. **The parties shall submit simultaneous briefs on or before March 6, 2017, and simultaneous responses on or before March 21, 2017. The parties are not to file replies.**

### V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' motion for partial summary judgment is **GRANTED**. The Plaintiffs' claim for operating without a valid Title V permit is **DISMISSED**, and Defendant PPL is **DISMISSED** from this action. **IT IS FURTHER ORDERED** that the parties are to file briefs addressing whether the Court should

exercise supplemental jurisdiction over the remaining state law claims in accordance with the above briefing schedule.

                                            **Joseph H. McKinley, Jr., Chief Judge**
                                                 **United States District Court**

February 13, 2017

cc:     counsel of record